IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUSAN KUJAWSKI, et al., | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | NO. 06-4120 |
| | : | |
| v. | : | |
| | : | |
| WAL-MART STORES, INC., | : | |
| | : | |
| Defendant. | : | |

### MEMORANDUM

Giles, J.                                                                                             September 25, 2007

      Susan Kujawski ("Ms. Kujawski") and John S. Kujawski ("Mr. Kukawski") (collectively "Plaintiffs"), husband and wife, bring this action against Wal-Mart Stores, Inc.[1] ("Defendant") alleging negligence, carelessness and recklessness following an incident in which Ms. Kujawski slipped and fell in one of Defendant's retail stores. Plaintiffs initiated this action in the Court of Common Pleas in Northampton County, Pennsylvania. Defendant removed this action to federal court on September 15, 2006. Currently before the court is Defendant's Motion for Summary Judgment. For the reasons that follow, the motion for summary judgment is granted.

---

[1] In its Answer, Defendant states that it should be identified as Wal-Mart Stores, East, LP. (Deft.'s Answer 1.) Plaintiff does not dispute this proposed correction.

I.  Facts

The facts, in a light most favorable to Plaintiffs, follow:

On August 20, 2004, Ms. Kujawski was shopping in one of Defendant's retail stores, a Wal-Mart department store, in Easton, Pennsylvania. (Pl.'s Compl. ¶ 3.) During her shopping visit, Ms. Kujawski turned with her shopping cart into an aisle that contained cleaning supplies. After only a few steps into the aisle, she lost her footing, slipped and fell into a puddle of liquid. (S. Kujawski Dep. 25-26.) Ms. Kujawski promptly brought her fall and the fact of a spill to the attention of two store employees. (S. Kujawski Dep. 26.) One of the employees found an empty bottle of baby lotion on the floor near the spill. This led Ms. Kujawski and the employees to conclude that the substance in which she slipped was baby lotion that came from that bottle. (S. Kujawski Dep. 31, 41, 43.) The empty bottle was the only container found on the aisle floor. (S. Kujawski Dep. 42.)

There was a mark through the puddle of baby lotion which Ms. Kujawski identified at her deposition as her slide mark. (S. Kujawski Dep. 37.) Ms. Kujawski admitted that there were no other skid marks, footprints or shopping cart marks going through the puddle. (S. Kujawski Dep. 39.) There was no dirt in the puddle. (S. Kujawski Dep. 39.) She did recall that several of the items on shelves of the aisle were disarrayed. (S. Kujawski Dep. 31.)

Prior to falling, she did not encounter anyone running away or hear anyone mention a spill. (S. Kujawski Dep. 30.) When Ms. Kujawski told the two employees about the spill, there was no recognition that they already knew there was a spill and, of course, Ms. Kujawski had no way of knowing how long the spill had been on the floor. (S. Kujawski Dep. 39, 48-49.)

Jacob Slifka ("Slifka") and Stephen Dutko ("Dutko"), both manager-trainees working the

day of the accident at the store, responded to the scene. (Slifka Dep. 62-66; Dutko Dep. 11-13.) Slifka testified in his deposition regarding a photograph taken of the floor in the cleaning aisle after the puddle was cleaned up. (Slifka Dep. 49-50.) He did not testify what section of the floor is depicted in the photograph, but did identify what appeared to him to be two scuff marks on the floor. (Slifka Dep. 50-54.) There was no testimony that the photograph depicted the actual site of the spill. (Slifka Dep. 50-54.)[2] Slifka characterized the aisle floor as being clean, except for an area with scuff marks. (Slifka Dep. 53.) With the exception of the baby lotion bottle, Slifka could not recall anything else out of place in the entire aisle. He stated that the aisle otherwise appeared to be "well zoned." (Slifka Dep. 59-60.) Slifka did not recall receiving any complaints about the condition of the store aisles on the day of the accident. (Slifka Dep. 62.)

Defendant store employee Sandy Engle ("Engle"), was also deposed. (Engle Dep. 1-37.) At the time of her testimony, Engle was the leader of the Easton store's Risk Control Team, although she did not hold that position at the time of the accident. (Engle Dep. 6, 10.) Engle could not recall whether she worked on the day of the accident. (Engle Dep. 14.) She testified generally to the responsibilities of employees, or associates, of the Wal-Mart store with respect to cleaning and stated that a store employee goes up and down the aisles of the store department "a lot" during the course of an hour. (Engle Dep. 35.)

The associates who work in a store department are responsible for making sure that their

---

[2] Only Ms. Kujawski testified about the characteristics of the puddle. Slifka has no recollection of arriving at the site of the spill. (Slifka Dep. 47-50.) His recollection of the condition of the site is limited to after the puddle was cleaned up through a photograph taken by him or Dutko. (Slifka Dep. 50.) Dutko testified that he did not "remember a lot of the scene" and that the puddle was already cleaned up by the time he arrived at the scene. (Dutko Dep. 13-14.)

departments are "zoned". This includes visually inspecting the department for hazards. (Engle Dep. 13; Slifka Dep. 28.) Associates are responsible for conducting safety sweeps of their department. This entails checking for spills, debris or other hazards, including obstructions of the aisles or unstable displays. (Engle Dep. 17; Slifka Dep. 19.) A "safety sweep" and a "zone check" are interchangeable words describing the same practices. (Engle Dep. 28.) Safety sweeps are scheduled to take place every three hours and announced over the store intercom. (Engle Dep. 17.) In addition, any employee can call for a safety sweep if he or she sees a potentially hazardous situation. (Engle Dep. 17-18.)

Typically, a department manager is assigned to each area. Whether a typical number of associates is assigned to an area is not in evidence. (Slifka Dep. 24-25.) The job description for a day maintenance associate, includes responsibilities such as to "constantly sweep, vacuum, and mop floors" and "operate floor maintenance machinery, work in an area that may require exposure to extreme conditions, [and] place items in their correct locations." (Slifka Dep. 38.) There was no testimony as to whether a maintenance associate was on duty at the Easton store between the hours of 7:00 a.m. and 12:00 p.m. on the date of the accident or when according to established practice the aisle in question would have likely been inspected by a store employee.[3]

Prior to the accident, Ms. Kujawski had not gone down the cleaning products aisle during her August 20, 2004 shopping trip at the store. (S. Kujawski Dep. 28.) When she fell, there was

---

[3] A Risk Control Resource Manual includes guidelines to help prevent slips, trips and falls, including practicing the "clean as you go method" and the completion of "safety sweeps on a regular basis to help keep the salesfloor free of slip and trip hazards." (Ex. E, Deft.'s Amend. Mot. Summ. J. 1) It is Wal-Mart™ Corporate policy that all associates "have a responsibility to conduct safety sweeps . . . periodically throughout the day." (Ex. D, Deft.'s Amend Mot. Summ. J. 1.)

only one other customer in the aisle, a female, who was further down at the opposite end. (S. Kujawski Dep. 30, 34.)

Plaintiffs allege that Ms. Kujawski sustained physical injuries as a result of the fall, including pain in her right toe, back, buttocks, joints; lumbar strain; strain of the SI joint[4]; and right leg radiculitis. (Pls.' Compl. ¶ 7.)

II.     Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure permits the entry of summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the burden of proving that no genuine issue of material fact is in dispute. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585 n. 10 (1986). A factual dispute is "material" only if it might "affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). There is only a "genuine" issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The court must examine the facts in a light favorable to the non-movant. Id. at 255. Furthermore, the court must resolve "all inferences, doubts and issues of credibility against the moving party." Smith v. Pittsburgh Gage & Supply Co., 464 F.2d 870, 874 (3d Cir. 1972) (citations omitted).

---

[4] The sacroiliac joint is located near the tailbone. The Online Medical Dictionary (The Centre for Cancer Education 1997-2007), http://cancerweb.ncl.ac.uk/omd/index.html.

The United States Supreme Court has further explained that "the burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 547 U.S. 317, 325 (1986). The nonmoving party must then "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (internal quotations and citations omitted).

III.     Discussion

The duty of care that a possessor of land owes to an entrant upon the land depends on whether that person is a trespasser, licensee or invitee. Guttridge v. AP Green Services, Inc., 804 A.2d 643 (Pa. Super. Ct. 2002) (citing Emge v. Hogasky, 712 A.2d 315, 317 (Pa. Super. Ct. 1998)). It is undisputed that Ms. Kujawski is a business invitee upon the facts of this case. Under Pennsylvania law, a possessor of land "is not the insurer of the safety of those on the premises, and the mere existence of a harmful condition or the mere happening of an accident is not evidence of a breach of duty of care to invitees." Gales v. United States, 617 F.Supp. 42, 43 (W.D. Pa. 1985) (citing Moultrey v. Great Atlantic & Pacific Tea Company, 422 A.2d 593 (Pa. Super. 1980)). A possessor of land owes the following duty to a business invitee:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
> a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

          c)      fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343 (1965); see also Moultrey, 422 A.2d at 593.  The threshold of establishing a breach of duty is notice.  To establish notice, an "invitee must prove either the proprietor of the land had a hand in creating the harmful condition, or he had actual or constructive notice of such condition."  Estate of Swift v. Northeastern Hosp. of Philadelphia, 690 A.2d 719, 722 (Pa. Super. Ct. 1997).  Constructive notice requires proof that the condition had been present long enough that, in the exercise of reasonable care, the defendant should have known of its presence.  Martino v. Great A & P Tea Co., 213 A.2d 608 (Pa. 1965).

     There is no allegation that Defendant had a role in creating the spill, nor is there an allegation that Defendant had any actual notice of the spill.  Plaintiffs, therefore, must establish that Defendant had constructive notice of the spill.  They argue that there is a genuine issue of material fact as to whether Defendant had constructive notice of the spill because Defendant's store employees have a responsibility to make sure their departments are "zoned" through methods such as frequent visual inspection of the aisles.  (Pls.' Mem of Law Contra Deft.'s Amend. Mot. Summ. J. 7.)  Plaintiffs' contention is that if Defendant or its agents and employees had performed their duties as required, the spill would have been discovered prior to Ms. Kujawski's accident.  (Pls.' Mem. of Law Contra Deft.'s Amend. Mot. Summ. J. 7.)

     State and federal courts applying Pennsylvania law in this area have consistently required a plaintiff to provide some proof as to the length of time a spill existed on the floor to establish constructive notice.  See, e.g., Martino, 213 A.2d at 608 (1965); Moultrey, 422 A.2d at 596 (1980); Read v. Sam's Club, No. 2:05-CV-00170-LDD, 2005 WL 2346112 (E.D. Pa. Sept. 23, 2005); Flocco v. Super Fresh Markets, Inc., No. CIV. A. 98-902, 1998 WL 961871 (E.D. Pa.

Dec. 29, 1998); Evans v. Canteen Corp., No. CIV. A. 94-2381, 1995 WL 355231 (E.D. Pa. June 13, 1995); Clark v. Fuchs, No. CIV. A. 93-1422, 1994 WL 13847, at *3 (E.D. Pa. Jan. 14, 1994); Gales, 617 F.Supp. at 42. The court finds no evidence in the record as to how the spill happened or as to how long the spill was on the floor prior to the accident. First, there is absolutely no testimony from any of Defendant's employees or agents who were working the day of the accident about the condition of the floors of this department prior to the accident. There is no evidence of the last time a maintenance worker or other employee cleaned that aisle. There is no evidence of the last time a store employee did a visual inspection of that aisle, or simply walked down it. There is no evidence of the time of the last safety sweep to take place prior to Ms. Kujawski's accident. Even if the record contained such evidence, it is not clear that it would adequately support the existence of constructive notice so as to defeat summary judgment. See Gales, 617 F.Supp. at 42 (finding plaintiff had not established constructive notice despite evidence that hospital employee had passed through area two hours prior and observed no puddle on the floor.)

     Second, the evidence regarding the physical appearance of the puddle and its surrounding area allows no inference other than that the puddle was fresh. Courts have considered the physical condition of a hazard as a factor in establishing constructive notice. See, e.g., Evans, 1995 WL 355231 at *2. Ms. Kujawski specifically testified as to the condition of the area and the spill immediately following the accident and did not mention any scuff marks. Nothing about the condition of the spill itself indicates that it was anything but recent. The only slide mark was from Ms. Kujawski's fall, there were no footprints or cart tracks through the puddle, there was no dirt in the puddle and the puddle was still wet. See, e.g., Flocco, 1998 WL 961971, at *3

(slippery condition not dry at time of fall); Evans, 1995 WL 355231 at *2 (noting footprints or tracking through a spill or accumulation of dirt are important factors that may establish that there has been sufficient time to establish constructive notice); Gales, 617 F. Supp. at 44 ("absence of tracking from the area of a spill is evidence that the spill is one of recent origin"). While Slifka testified that a photograph of the floor of the aisle shows two scuff marks, this evidence is irrelevant. (Slifka Dep. 50.) Plaintiffs present no evidence that these scuff marks were present before the accident or even of the physical distance between these scuff marks and the puddle itself. Plaintiffs offer no definition of a scuff mark. The court assumes that they are black marks on the floor associated with a rubber heel dragging across the floor. There has been no showing that scuff marks are indicative of a slip. It is just as possible scuff marks are caused by someone dragging a foot or a defective heel on a shoe. Scuff marks are not dirt, and they could be cleaned over and still remain. Moreover, as a matter of common knowledge, the characteristics of lotion may be inconsistent with a slip leaving scuff marks.

Third, Plaintiffs provide no evidence that Ms. Kujawski, or anyone else, observed the aisle in which the spill occurred prior to her accident for any period of time. She admits that the trip down the aisle during which she fell was the first trip to that area of the store during that visit. She fell in the puddle approximately three feet after turning into the aisle. She does not argue that she had a view of the aisle for any period of time prior to the accident or that she would have heard the baby lotion spill due to her proximity to the aisle. See, e.g., Ryan v. Super Fresh Food Markets, Inc., No. Civ.A. 99-CV-1047, 2000 WL 537402, at *2 (E.D. Pa. April 26, 2000) (Plaintiff's testimony that she had a 15 minute conversation with couple near spill and would have heard pudding container drop was circumstantial evidence that the spill did not occur

immediately before the accident and raised a genuine issue of material fact as to whether the defendant had constructive notice of the spill); Kania v. Sbarro, Inc., No. Civ. A. 97-6863, 1998 WL 800320, at *2 (E.D. Pa. Nov. 13, 1998) (constructive notice could be inferred as the plaintiff saw no employees in buffet area for five to ten minutes before accident, lettuce was brown and manager admitted restaurant was short-handed on day of accident).  Plaintiffs present no other circumstantial evidence that the spill occurred earlier than immediately prior to Ms. Kujawski's accident.

      The evidence that store employees were under a responsibility to constantly monitor their departments for potential hazards or that a specific maintenance associate is responsible for constantly cleaning the floors throughout the store is not adequate to establish constructive notice.  Despite Plaintiffs' arguments that Defendant did not abide by its own policies regarding housekeeping, the court cannot reach such a conclusion on the evidence of record.  Even if the court could reach such a conclusion, it would not be sufficient to raise a genuine issue of material fact suggestive of constructive notice.  The record is simply devoid of any evidence of when the spill occurred.  A jury would be asked to engage in pure speculation if this case were allowed to go forward.

      Having reviewed the parties' submissions, including the depositions, the court concludes there is no genuine issue of material fact that Defendant, through its employees or agents, had constructive notice of the spill prior to Ms. Kujawski's fall, and Plaintiffs are unable to establish liability through a notice theory of negligence under § 343 of the Restatement (Second) of Torts.

      While Plaintiffs appear to proceed primarily on a notice theory of negligence, to the extent that Plaintiffs seek to establish negligence under § 328D of the Restatement (Second) of

Torts, captioned "Res Ipsa Loquitur"[5], the court finds that there is no genuine issue of material fact which would permit a reasonable jury to enter a verdict in their favor under this theory. The Pennsylvania Supreme Court adopted § 328D in Gilbert v. Korvette, Inc., 327 A.2d 94, 100 (Pa. 1974). Section 328D provides:

> 1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when
>    a) the event is of a kind which ordinarily does not occur in the absence of negligence.
>    b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and
>    c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.
> 2) it is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.
> 3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached.

Restatement (Second) of Torts § 328D (1965). A plaintiff must prove that it is more likely than not that any negligence was caused by the defendant, not plaintiff or a third party. See Restatement (Second) of Torts § 328D cmt. f (1965); Lonsdale v. Joseph Horne Co., 587 A.2d 810, 816 (Pa. Super. Ct. 1991).

Here, the evidence cannot sufficiently eliminate third parties as a responsible cause of Plaintiff's accident. As such, there is simply no evidence that would permit a reasonable jury to find that Plaintiff can establish circumstantial negligence under § 328D.

An appropriate order follows.

---

[5] "The thing speaks for itself." Restatement (Second) of Torts cmt. a (1965).